

**FILED**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*RECEIVED*

*May 13 2008*

08cv1592

*MAY 1 3 2008*

Case No.: 108-CV-01592

*JUDGE ROBERT W. GETTLEMAN*
*UNITED STATES DISTRICT COURT*

|  |  |
|---|---|
| DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.), et. al., | ) ) ) ) |
| Plaintiffs-Judgment Creditors, | ) ) |
| vs. | ) ) |
| ISLAMIC REPUBLIC OF IRAN, et al., | ) ) |
| Defendants-Judgment Debtors. | ) ) ) |

Judge Robert Gettleman
Magistrate Judge Martin C. Ashman

<u>**DEBORAH D. PETERSON'S MEMORANDUM OF LAW IN SUPPORT OF DEBORAH D. PETERSON'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF RECEIVER OF THE PERSEPOLIS FORTIFICATION COLLECTION AND THE CHOGHA MISH COLLECTION PURSUANT TO F.R.C.P. 66, LOCAL RULE 66.1, F.R.C.P. 69(a)(1), THE LAWS OF THE STATE OF ILLINOIS, AND THE PRINCIPLE AND PRACTICES OF EQUITY HEREIN**</u>

(THE PERSEPOLIS COLLECTION AND CHOGHA MISH COLLECTION IN THE HANDS
OF THE UNIVERSITY OF CHICAGO)

## I. <u>INTRODUCTION.</u>

On 10/23/83 at the hour of approximately 6:30 a.m., a suicide bomber drove a hijacked water truck, ladened with more than 6 tons of explosive, into the Marines Barracks at the outskirts of the Beirut Airport, which exploded on impact, causing the death of 241 servicemen, consisting of 221 Marines, and the rest, Navy medical personnel and soldiers assigned to the 24th Marine Amphibias Unit. The sentry on station barely had time to chamber a round and shoulder his weapon.

This terrible tragedy changed the landscape in the Middle East, which reverberates through current times.

The Marine families retained counsel and ultimately filed an action in the United States District Court, District of Columbia, entitled *Peterson vs. The Islamic Republic of Iran*, which led to a judgment against Iran in the principal amount of $2,656,944,877 rendered by the Honorable Royce C. Lamberth on 9/7/07. At the time, Iran was generally protected by the Foreign Sovereignty Immunities Act ("FSIA") found at 28 U.S.C. § 1601 et seq., with a number of exceptions, principally centering around assets which were "blocked" and "unblocked" and the like. However, on 1/28/08, President Bush signed into effect legislation which effectively repealed the FSIA, in total, which is found at (in part) 28 U.S.C. 1605A. The key parts of that new section permitting meaningful collection efforts are found in " 28 U.S.C. § 1605(A)(a)(1) & (g)

## II. <u>MOTION FOR APPOINTMENT OF RECEIVER BY THESE PLAINTIFFS.</u>

Plaintiffs are entitled to enforce all remedies available to any Judgment Creditor under

F.R.C.P. 69(a)(1), which would traditionally include the appointment of a post-judgment receiver, consistent with practices long heretofore undertaken by District Courts. Appointment of receivers post-judgment remains a favored remedy to reach assets either inaccessible by standard levy and execution or assets difficult to liquidate through a Marshal's sale. Receivers are appropriate when a debtor is incapable of caring for the asset, or the asset is subject to loss, damage, or diminution. Receivers are appointed when they can best represent a debtor's interest in the management of a fragile asset or asset which needs special care or control. This is one of those unique cases in which a receiver's entry into the Rubin Litigation would serve the best interest of all parties, save Rubin, and maximize the financial return for these Plaintiffs.

Plaintiffs file a motion for appointment of a receiver in this jurisdiction, seeking a receiver of the Persepolis Fortification Collection and the Chogha Mish Collection, held by The University of Chicago dba The Oriental Institute, which is currently the subject of a 5-year litigation quest by Jenny Rubin in this court in the case entitled *Jenny Rubin vs. The Islamic Republic of Iran*, Case No. 03-CV-9370 ("Rubin Litigation"). The short summary is that Rubin allegedly levied upon the personal property under the existent FSIA, claiming now that the personal property is used for a "commercial purpose," and therefore Rubin is entitled to have the personal property sold. Rubin in fact seeks the appointment of her own receiver, as seen in Document No. 164, constituting a Creditor's Verified Petition for Appointment of a Receiver and an accompanying unsigned Order as Document No. 164-2.

The subject matter of this receivership motion has been well defined in the Rubin Litigation, as set forth by the Affidavit of Matthew W. Stolper, Document No. 11, filed on 6/16/04, a copy marked *Exhibit "A,"* and the second Affidavit of Matthew w. Stolper, Document

-2-

No. 199-5 filed on 9/26/06, marked *Exhibit "B."* [1] In his affidavits, Raymond Tindal as senior curator describes in detail at paragraph 5, page 2, the Chogha Mish Collection as "writings and clay fragments that have seal impressions," marked *Exhibits "C" and "D."* Generally, the Persepolis Fortification Collection and the Chogha Mish Collection constitute antiquities of tablets, fragments, and potentially seals, cylinders, and other objects which may contain Cuneiform impressions, or otherwise. From the viewpoint of liquidating Iran's assets to pay this judgment, the sole effective remedy would be a receiver who would 1) clearly identify Iran's residual rights, 2) insure that the collections are not damaged, injured, broken up, or diminished in value, 3) commence the process of negotiating a potential sale of the residual rights to an institution of higher learning, and 4) maintain the current access by the scholarly community established by The University of Chicago. The United States has filed multiple Statements of Interest, indicating the concern of the United States and any relief avoid unduly disrupting foreign relations between the U.S. and Iran, and furthermore avoid inflaming the Iranian public from a perception that its cultural patrimony is being squandered through antique stores, auction houses, and commercial dealers. To reconcile these significant political, academic, and anthropological concerns, the receivers as proposed, all retired Federal Judges, duly charged with an immense responsibility, would endeavor to find a solution seeking to meet the needs of multiple communities.

### III.  CORRECT DEFINITION OF IRAN'S INTEREST.

Iran's interest in these two collections consist of the residual rights for the return of the

---

[1] All exhibits are incorporated by reference as though fully set forth in this Memorandum in their entirety and are attached to the Declaration of David J. Cook, Esq. which is filed contemporaneously herein.

collection at some later date. Other than the Chogha Mish Collection, Iran has placed the collection in the hands of The University of Chicago on a permanent "bailment basis," in which Iran has reposed this collection virtually in a "bailment at will." Iran does not claim nor assert (other than the Chogha Mish Collection) any immediate right of return, or demand that the personal property be shipped, by airfreight or otherwise, back to Tehran. Iran's interest is best characterized as a "general intangible" or "residual right" akin to the classic "remainder interest" on a perennial and perpetual basis. Plaintiffs recognize that some of these items, specifically part of the Chogha Mish Collection, are the subject of the Iran-U.S. Claims Tribunal process, thereby further supporting the need of a receiver to avoid any ongoing conflict with the United States.

Plaintiffs therefore move this court for the appointment of a receiver(s) of Iran's right, title and interest in and to these collections, which principally consist of the "residual interest," constituting a classic "general intangible." Iran is the sole party by which to assert its right in and to the collection, as set forth by way of Judge Martin C. Ashman's MEMORANDUM, OPINION AND ORDER, Document No. 123, marked *Exhibit "E,"* holding that only Iran can assert its own interest in and to the collections, at least to asserting the FSIA defense. This of course was affirmed by Judge Manning in her MEMORANDUM AND ORDER as Document No. 163, marked *Exhibit "F."*

## IV. POWERS AND DUTIES OF THE RECEIVER.

Plaintiffs propose the following powers and duties:

1. To take possession, custody and control of the collections, and the residual interest therein.

2. To oust Iran from the Rubin Litigation, and substitute the receivers as the adverse parties.

-4-

3. To arrange a resolution with The University of Chicago, to permit The University of Chicago to retain physical custody of the collections pursuant to the pre-existing terms with Iran, in which The University of Chicago's pre-existing rights with Iran shall remain unabridged.

4. To sell solely to an institution of higher learning, museum, or like institution, Iran's residual rights in the collections.

5. To permit the receivers to retain the services of a broker, agent, or representative in the sale of the rights, retain counsel, accountants, establish bank accounts, and otherwise conduct normal business activities incidental to their duties.

6. To solicit such offers to sell the residual rights, which may include sealed bids, auction, consignment or brokerage, subject to final court approval upon notice to all parties.

7. To establish one or more bank accounts to impound all proceeds, be imbued with the power to affix the name of Iran to any check, draft, money order, note or instrument, to sign any contract, memorandum of understanding, or agreement in the name of Iran, or otherwise take any action as if the owner thereof.

8. To settle, resolve, terminate, negotiate any settlement, resolution or termination, or dispose of the Rubin Litigation as to The University of Chicago claim, subject to approval by this court.

9. To take any other action, including the filing of any papers, pleadings, appearance, or presentation in the Rubin Litigation, and take all other action therein consistent with the prosecution of Iran's interest therein, for the purpose of securing the most advantageous outcome on behalf of the Plaintiffs.

10. To post a bond in the amount as designated by the court.

11. That Iran be stayed, prohibited and enjoined, after appointment of this order, to participate in the Rubin Litigation.

12. That the court keep and retain continuing jurisdiction to supervise the conduct of the receivers, enter such orders to assure an orderly administration, restrain third parties from interfering with the conduct of the receiver, and to take any action which is appropriate.

The court has wide discretion in the appointment of a receiver, the scope of the duties, and management of the estates. See Securities and Exchange Commission vs. Hardy etc,. 803 F.2d 1034 (9th Cir. 1986) at pages 1037 to 1038 in which the court stated as follows:

-5-

"First, a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. *"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."* Lincoln Thrift, 577 F.2d at 606; see Safety Finance, 674 F.2d at 373 (a court overseeing a receivership is accorded "wide discretionary powers" in light of "the concern for orderly administration"). . . .

Plaintiffs select as receivers three former federal Judges, Judge Sporkin, Judge Sullivan and Judge Freeh, all of whom had other careers which would readily qualify them as individuals capable of resolving these claims and converting them into cash.

The duties of a receiver can be expansive, but steps in the shoes of the debtor. See Securities and Exchange Commission vs. American Capital Investments etc., 98 F.3d 1133 (9th Cir. 1996) at pages 1144 to 1145, in which the court stated as follows:

"Reebok Int'l v. Marnatech Enter., Inc., 970 F.2d 552, 561-62 (9th Cir.1992) (quoting Brown v. Swann, 35 U.S. (10 Pet.) 497, 503, 9 L.Ed. 508 (1836)). Second, the leading treatise on the law of receiverships teaches:

*It is generally conceded that a court of equity having custody and control of property has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take possession and control of and to preserve property, resting in the sovereignty and exercised through courts of chancery, or courts having statutory power to make the sale.*

. . .

We turn now to appellants' second and third arguments, which are related--that there is no federal common law of receiverships. Consequently, they argue, a receiver does no more than "step into the shoes" of the receivership defendant under state law and can convey no more title than the defendant possessed. For support, appellants rely on O'Melveny & Myers v. FDIC, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), in which the Court held that state law, rather than federal law, governs the imputation of corporate officers' knowledge of fraud to a corporation, where the FDIC, as receiver, is prosecuting the corporation's state causes of action. Id. at ---- - ----, 114 S.Ct. at 2052-53.

Receivership proceedings are classically *in rem*, placing the property in the custody of the court through the management of the receiver and in which the property becomes free of

-6-

collateral levy and execution from other creditors. See Federal Trade Commission vs.

Productive Marketing etc., 136 F. Supp.2d 1096 (C.D., Cal. 2001), at page 107 in which the

court stated as follows:

> "*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F.Supp. 369, 372
>
> (D.Colo.1995); *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d
>
> Cir. 1965) ("***There is substantial jurisdictional basis for allowing the federal***
>
> ***court receiver to have and keep custody and control of the assets in question,***
>
> ***and to obtain the relief needed to implement that custody.***"); *SEC v. Hardy*, 803
>
> F.2d 1034, 1037 (9th Cir. 1986) ("The basis for broad deference to the district
>
> court's supervisory role in equity receiverships arises out of the fact that most
>
> receiverships involve multiple parties and complex transactions."); *Paccione*, 964
>
> F.2d at 1275 (affirming criminal contempt sanctions against "a person who
>
> interfered with the *res,* the disposition of which the court had specifically
>
> restricted")." (Emphasis added)

## V. STARTING POINT OF ENFORCEMENT OF FEDERAL CIVIL JUDGMENTS.

The starting point of enforcement is found in F.R.C.P. 69(a)(1), which provides as

follows:

> Rule 69. Execution
> (a) In General.
> (1) Money Judgment; Applicable Procedure.
> A money judgment is enforced by a writ of execution, unless the court directs
> otherwise. The procedure on execution — and in proceedings supplementary to
> and in aid of judgment or execution — must accord with the procedure of the
> state where the court is located, but a federal statute governs to the extent it
> applies.

Receivers are traditionally appointed for purposes of taking possession and control, and ultimately liquidating the property of a Judgment Debtor. See Federal Practice and Procedure 2d by Wright & Miller, Vol. 12, § 2983, pages 22-23 [multiple citations omitted]. Receivers are traditionally appointed in a supplemental proceeding when the interest of equity suggests such a result, specifically, when property would be difficult to reach in any other traditional manner. See **Wood vs. Noyes**, 279 F.321 (9th Cir. 1922). Therefore, this court has the power to appoint a receiver as a general equitable matter, and does appoint receivers from time to time. USDC, Northern District of Illinois, Local Rule 66.1 provides as follows:

> LR66.1. Receivers; Administration of Estates
> Local Rule
> (a) General. The administration of estates by receivers or other officers shall be similar to that in bankruptcy cases except that the court in its discretion shall –
> (1) fix the allowance of compensation of receivers or similar officers, their counsel, and any others appointed to aid in the administration of the estate, and
> (2) direct the manner in which the estate shall be administered, including the conduct of its business, the discovery and acquirement of its assets, and the formation of reorganization plans.

Using bankruptcy as the touchstone, a bankruptcy judge in the administration of a Chapter 7 proceeding would clearly exercise "hands on jurisdiction" to insure that the competing needs of all parties are met and would avoid the prospect that assets would be damaged, lost or suffer a diminution in value.

In light of the abolition of FSIA's shield in favor of Iran, Iran's claim to the collections, standing in the Rubin Litigation, and residual rights, are all now available to these Judgment Creditors to satisfy their judgment. However, these Judgment Creditors recognize that the best interest of all parties are served by structuring an order permitting the receivers to achieve a

-8-

financial recovery from the collections without disturbing the interest of The University of Chicago and the scholarly community at large. In short, replacing Iran with receivers might well serve the greater good.[2] In Securities and Exchange Commission vs. Loving Spirits Foundation etc., 392 F.3d 486 (U.S.App.D.C. 2004), the court stated as follows:

> "Seven years later, with the judgment still unpaid, the district court found Bilzerian in contempt of the disgorgement order, *SEC v. Bilzerian,* 112 F.Supp.2d 12 (D.D.C.2000), *aff'd* 75 Fed.Appx. 3 (D.C.Cir. 2003), established a receivership estate *"for the purpose of identifying, marshaling, receiving, and liquidating his assets,"* *SEC v. Bilzerian,* 127 F.Supp.2d 232, 232 (D.D.C.2000), appointed appellee Deborah Meshulam as receiver, *id.,* and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian,* 131 F.Supp.2d 10 (D.D.C.2001). (Emphasis added) (p. 488)"

The starting point is found under 28 U.S.C. § 754, which provides as follows:

> **§ 754. Receivers of property in different districts**
> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

## VI.  PROPOSED RECEIVERS.

Plaintiffs nominate the following nominees as receivers:

A.     EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of

---

[2] By any stretch of the imagination, scholarly study exploring ancient Mesopotamian culture and history is a much better outcome than peddling pieces of this collection through high-end antique stores on Rodeo Drive.

Appeals Court for the Armed Forces.

B.    STANLEY SPORKIN, Retired United States District Court Judge and Former General Counsel for the Central Intelligence Agency.

C.    LOUIS FREEH, Retired United States District Court Judge and Former Director of the FBI.

Each one of these individuals are former federal judges, all with backgrounds in national security, military, and intelligence matters, and all of them would be more than capable of performing in this assignment, meeting the expectations of all parties. These proposed receivers are all very exceptional individuals who bring with them such experience, sagacity, and wisdom, unlike other commercial receivers, to meet the challenge of this significant case, and attempt to reconcile multiple conflicting interests.

## VII. <u>ADVERSE CLAIM OF RUBIN.</u>

Plaintiffs expect that the Rubin parties will at some time oppose this motion, or battle the receiver in one or more forums, on the basis that Rubin was "first in line." Plaintiffs are certainly willing to accept this challenge and can faithfully argue that the appointment of a receiver would be superior to any of Rubin's claims. However, this court in this setting need not adjudicate the entitlement of the Rubin parties, or any other parties, who might be competitors.

## VIII. <u>CONCLUSION.</u>

The Rubin Litigation has pitted victims of Iran's terror against, among others, Iran, the scholarly community, The University of Chicago, and the United States. If Rubin wins, the collections in the hands of The University of Chicago might well be broken up and scattered in the hands of dealers, auction houses, and antique dealers, all to the detriment of the scholarly community being deprived of a priceless resource into a civilization more than two millennium

-10-

old.  These Peterson Plaintiffs, like the Rubin parties, wish to see recompense for their terrible

losses, but envision the appointment of these receivers under these terms as the most viable

outcome to accommodate everybody's interest.

DATED:  May 11, 2008                           Plaintiffs, by their attorneys

                                               By:
                                               JAY GLENN, ESQ.



                                  DAVID J. COOK, ESQ.
                                  COOK COLLECTION ATTORNEYS
                                  P.O. Box 270
                                  San Francisco, CA 94104-0270
                                  Telephone: (415) 989-4730
                                  Fax: (415) 989-0491
                                  Email: Cook@Squeezebloodfromturnip.com


F:\USERS\DJCNEW\peterson.appoint3mpa

-11-

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 1 3 2008

Judge Robert W. Gettleman
United States District Court

DEBORAH D. PETERSON, Personal )
Representatives of the Estate of James C. )
Knipple (Dec.), et. al., )
                           )
      Plaintiffs-Judgment Creditors, )
                           )
vs.                             )
                           )
ISLAMIC REPUBLIC OF IRAN, et al., )
                           )
      Defendants-Judgment Debtors. )
                           )

Case No.: 108-CV-01592

Judge Robert Gettleman
Magistrate Judge Ashman

### PROOF OF SERVICE

*Via Email dr-ahmadinejad@president.ir*
PRESIDENT DR. AHMADINEJAD

ISLAMIC REPUBLIC OF IRAN
acting through its
MINISTRY OF DEFENSE AND
SUPPORT FOR ARMED FORCES
No. 1 Shahid Kaboli Street
Beginning of Resalat Highway
Seyyed Khandan Bridge
P.O. Box 16765-1479
Tehran, Iran
Attn: Responsible Officer

ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran, Iran
ATTN: Responsible Officer

ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue
United Nations Street
Teheran, Iran
ATTN: Responsible Officer

AUSA
United States Attorney's Office (NDIL)
219 South Dearborn Street , Suite 500
Chicago, IL 60604

Matthew G. Allison
Baker & McKenzie LLP (Chicago)
One Prudential Plaza
130 East Randolph Drive, Suite 3500
Chicago, IL 60601

R. Clay Bennett
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

1

Rupa Bhattacharyya
United States Department of Justice
Federal Programs Branch
PO Box 883
901 East Street, N.W., Room 910
Washington, DC 20044

Robert David Cheifetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603

Thomas G. Corcoran
Berliner Corcoran & Rowe, LLP
1101 17th Avenue
Washington, DC 20036-5555

Thomas Justin Cunningham
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Thomas Anthony Doyle
Baker & McKenzie LLP (Chicago)
One Prudential Plaza
130 East Randolph Drive, Suite 3500
Chicago, IL 60601

Lesley R. Farby
U.S. Dept. of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

Simon A. Fleischmann
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Richard M. Franklin
Baker & McKenzie
130 East Randolph Drive, Suite 3200
Chicago, IL 60601

Kevin David Kelly
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Hillary Paige Krantz
Freeborn & Peters, LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606

Michael D. McCormick
708 Tomlin Drive, Suite 1800
Burr Ridge, IL 60527

Timothy M Murphy
Timothy M. Murphy, P.C.
4436 North Kildare Avenue
Chicago, IL 60630

Robert S. Parker
McIntyre, Tate, Lynch & Holt
321 South Main Street, Suite 400
Providence, RI 02903

Daniel A. Shmikler
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603

David J. Strachman
McIntyre, Tate, Lynch & Holt
321 South Main St., #400
Providence, RI 02903

United States Attorney's Office
219 South Dearborn
Chicago, IL 60604

Laina C. Wilk
Berliner, Corcoran & Rowe, LLP
1101 17th Street, NW
Washington, DC 20036

2

Renee Helen Wiszowaty
Litchfield Cavo
303 West Madison Street, Suite 300
Chicago, IL 60606


I declare:

I am employed in the County of San Francisco, California. I am over the age of eighteen (18) years and not a party to the within cause. My business address is 165 Fell Street, San Francisco, CA 94102. On the date set forth below, I served the attached:

ERRATA TO NOTICE OF MOTION FOR APPOINTMENT OF RECEIVER

ORDER GRANTING MOTION FOR APPOINTMENT OF RECEIVER

on the above-named person(s) by:

___XXX___ (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the person(s) served above.

___XXX___ (BY EMAIL) Emailing to the email address of the party listed above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2008.


_____
Karene Jen

3