UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH D. PETERSON, Personal ) | |
| Representatives of the Estate of James C. ) | |
| Knipple (Dec.), et. al., ) | Case No.: 108-CV-01592 |
| ) | |
| Plaintiffs-Judgment Creditors, ) | Judge Blanche Manning |
| ) | |
| vs. ) | |
| ) | Date:  June 19, 2008 |
| ISLAMIC REPUBLIC OF IRAN, et al., ) | Time:  11:00 a.m. |
| ) | Address of Court: |
| Defendants-Judgment Debtors. ) | 209 South Dearborn Avenue. |
| ) | Chicago, Ill 60604 |

## NOTICE OF MOTION FOR APPOINTMENT OF RECEIVER

(THE PERSEPOLIS COLLECTION AND CHOGHA MISH COLLECTION IN THE HANDS
OF THE UNIVERSITY OF CHICAGO)

PLEASE TAKE NOTICE that on June 19th, 2008 at 11:00 a.m., or as soon thereafter as

counsel may be heard, Plaintiffs DEBORAH D. PETERSON, Personal Representatives of the

Estate of James C. Knipple (Dec.), et. al., and all of the others as listed in the Judgment in the

action entitled *Peterson vs. Islamic Republic of Iran* pending in the United States District Court,

District of Columbia Case No. 01-2094 (RCL). shall appear before the Honorable Blanche M.

Manning in the United States District Court for the Northern District of Illinois, Eastern

Division, Room 2125, to present a motion for the appointment of a receiver of that certain

collection of Iranian antiquities, artifacts, and artwork, in the possession and the control of The

University of Chicago aka The Oriental Institute, consisting generally of the Persepolis

Fortification Collection and the Chogha Mish Collection.

The purpose of the motion for appointment of a receiver is the following:

1. Ejecting and substituting out (ousting). ISLAMIC REPUBLIC OF IRAN ("Iran") as a participant in. party to, and asserting any right in and to that certain action(s) generally entitled *Jenny Rubin, et al. vs. The Islamic Republic of Iran, et al., The University of Chicago, et al., Citation Third Party Respondents, and The Field Museum, Third Party Respondent* pending in the United States District Court, Northern District of Illinois, Eastern Division. Case No. 03-CV-9370 ("Rubin Litigation"), and all proceedings therein before the Honorable Blanche M. Manning. District Court Judge Presiding, and Martin C. Ashman. Magistrate Judge Presiding therein.

2. Granting the receiver(s) the right to subsume and take possession, custody and control of. all of the right, title and interest of Iran to the Persepolis Fortification Collection and the Chogha Mish Collection. and each of the same. which rights include. but not limited to. all general intangible rights and residual rights.

3. Granting the receiver(s) the right to sell, dispose, and/or convey, solely as a total inviolate body. the Persepolis Fortification Collection and the Chogha Mish Collection, as opposed to breaking them up. limiting the sales of the residual rights therein to any university. college. museum. anamosinary institution, or third party, constituting an institution of higher learning.

4. Resolving in part or in whole, by settlement or otherwise, the pendency of the Rubin Litigation. leaving in the hands of the University of Chicago, the Persepolis Fortification Collection and the Chogha Mish Collection, and each of the same. pursuant to the terms and

conditions of the bailment by and between Iran and the University of Chicago herein, either in part or in whole.

5. Engaging in a settlement or other disposition, whether by trial, monetary or payment, by and between Iran and University of Chicago herein.

6. Seeking an order declaring that right, title and interest of Jenny Rubin in and to the collections held by the University or Chicago is void as a matter of law, or junior to any right, title or interest of these Plaintiffs.

The specific powers and duties of the receiver(s) follows:

1. To take possession, custody and control of the collections, and the residual interest therein.

2. To oust Iran from the Rubin Litigation, and substitute the receiver(s) as the adverse parties.

3. To arrange a resolution with The University of Chicago, to permit The University of Chicago to retain physical custody of the collections pursuant to the pre-existing terms with Iran, in which The University of Chicago's pre-existing rights with Iran shall remain unabridged.

4. To sell solely to an institution of higher learning, museum, or like institution, Iran's residual rights in the collections.

5. To permit the receiver(s) to retain the services of a broker, agent, or representative in the sale of the rights, retain counsel, accountants, establish bank accounts, and otherwise conduct normal business activities incidental to their duties.

6. To solicit such offers to sell the residual rights, which may include sealed bids, auction, consignment or brokerage, subject to final court approval upon notice to all parties.

7. To establish one or more bank accounts to impound all proceeds, be imbued with the power to affix the name of Iran to any check, draft, money order, note or instrument, to sign any contract, memorandum of understanding, or agreement in the name of Iran, or otherwise take any action as if the owner thereof.

8. To settle, resolve, terminate, negotiate any settlement, resolution or termination, or dispose of the Rubin Litigation as to The University of Chicago claim, subject to approval by this

court.

9. To take any other action, including the filing of any papers, pleadings, appearance, or presentation in the Rubin Litigation, and take all other action therein consistent with the prosecution of Iran's interest therein, for the purpose of securing the most advantageous outcome on behalf of the Plaintiffs.

10. To post a bond in the amount as designated by the court.

11. That Iran be stayed, prohibited and enjoined, after appointment of this order, to participate in the Rubin Litigation.

12. That the court keep and retain continuing jurisdiction to supervise the conduct of the receiver(s), enter such orders to assure an orderly administration, restrain third parties from interfering with the conduct of the receiver, and to take any action which is appropriate.

DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple

(Dec.), et. al., moves this court for the appointment of a receiver(s) pursuant to FRCP 66, Local

Rule 66.1, the principles of equity and the practices of court in the appointment of receiver(s),

heretofore practiced, and which are otherwise permitted under FRCP 69(a)(1), and otherwise

under the laws of the State of Illinois and/or the practices of equity hereunder.

DATED:  June 10, 2008

Plaintiffs, by their attorneys

By:   /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
COOK COLLECTION ATTORNEYS
P.O. Box 270
San Francisco, CA 94104-0270
Telephone: (415) 989-4730
Fax: (415) 989-0491
Email: Cook@Squeezebloodfromturnip.com

DATED: June 10, 2008

FAY LAW PA

By:   /s/ Thomas Fortune Fay
        THOMAS FORTUNE FAY, ESQ.
601 Pennsylvania Avenue, NW
#900 - South Building

Washington, DC 20004
Telephone: 202-589-1300
Fax: 202-589-1300
Email: ThomasFay@aol.com

DATED: June 10, 2008                 By: ___/s/ Jay Glenn_____
                                     JAY GLENN. ESQ. (ARDC #0970719)
                                     2275 Half Day Road, Suite 350
                                     Bannockburn, IL 60015
                                     Telephone: (849) 526-9209
                                     Fax: (847) 526-9207
                                     Email: glennatty@aol.com

                                     Attorneys for Plaintiffs
                                     DEBORAH D. PETERSON, Personal
                                     Representatives of the Estate of James C. Knipple
                                     (Dec.). et. al.

F:\USERS\DJCNEW\peterson.appoint3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH D. PETERSON, Personal | ) | |
| Representatives of the Estate of James C. | ) | |
| Knipple (Dec.), et. al.. | ) | Case No.: 108-CV-01592 |
| | ) | |
| Plaintiffs-Judgment Creditors. | ) | Judge Blanche Manning |
| | ) | |
| vs. | ) | |
| | ) | Date of Hearing: June 19. 2008 |
| ISLAMIC REPUBLIC OF IRAN. et al., | ) | Time: 11:00 am. |
| | ) | Address of Court: |
| Defendants-Judgment Debtors. | ) | 219 South Dearborn Avenue |
| | ) | Chicago, Ill. 60604 |

## DEBORAH D. PETERSON'S MEMORANDUM OF LAW IN SUPPORT OF DEBORAH D. PETERSON'S NOTICE OF MOTION FOR APPOINTMENT OF RECEIVER OF THE PERSEPOLIS FORTIFICATION COLLECTION AND THE CHOGHA MISH COLLECTION PURSUANT TO F.R.C.P. 66, LOCAL RULE 66.1, F.R.C.P. 69(a)(1), AND MOTION TO DETERMINE INTEREST OF RUBIN PARTIES

(THE PERSEPOLIS COLLECTION AND CHOGHA MISH COLLECTION IN THE HANDS OF THE UNIVERSITY OF CHICAGO)

# TABLE OF CONTENTS

PAGES:

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.     MOTION FOR APPOINTMENT OF RECEIVER BY THESE PLAINTIFFS . . . . . . -1-

III.    CORRECT DEFINITION OF IRAN'S INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

IV.    POWERS AND DUTIES OF THE RECEIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

V.     PROPOSED RECEIVERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

VI.    ADVERSE CLAIM OF RUBIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

VII.   CONSEQUENCES OF DEFECT IN THE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . -9-

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

i

# TABLE OF AUTHORITIES

**CASES:**                                                                  **PAGES:**

*Consumer Product Safety Comm'n v. GTE Sylvania*

    (1980) 447 U.S. 102 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] .................. -10-

*Ford Motor Credit Co. v. Cenance*

    (1981) 452 U.S. 155 [101 S.Ct. 2239, 2241, 68 L.Ed.2d 744] .................. -10-

*Jenny Rubin vs. The Islamic Republic of Iran*

    Case No. 03-CV-9370 ............................................... -2-, -8-

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*

    (1990) 494 U.S. 827 [110 S.Ct. 1570, 1575, 108 L.Ed.2d 842] ................. -10-

*Securities and Exchange Commission vs. American Capital Investments etc.*

    98 F.3d 1133 (9th Cir. 1996) ............................................ -4-

*Securities and Exchange Commission vs. Hardy etc.*

    803 F.2d 1034 (9th Cir. 1986) ........................................... -4-

*Securities and Exchange Commission vs. Loving Spirits Foundation etc.*

    392 F.3d 486 (U.S.App.D.C. 2004) ....................................... -6-

*Sniadach v. Family Finance Corp.*

    (1969) 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 ..................... -11-, -12-

*Wood vs. Noyes*

    279 F.321 (9th Cir. 1922) .............................................. -5-

## STATUTES:

28 United States Code

      § 1605A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

      § 1601 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

      § 1605A(a)(1) & (g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

Federal Rules of Civil Procedure

      66 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

      69(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-. -3-

*Illinois Statutes & Rules:*

Illinois Supreme Court Rule of Court

      105(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

      277 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

      277(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

      277(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Illinois Compiled Statutes

      Sec. 2-1402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-. -9-

      Sec. 2-1402(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

      Sec. 2-1402( c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -9--12-

      Sec. 2-1402(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

      Sec. 2-1402(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-. -10-. -12-

United States District Court. Northern District of Illinois

      Local Rule 66.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Other:*

*Federal Practice and Procedure 2d* by Wright & Miller, Vol. 12, § 2983, pages 22-23 . . . . . -5-

.

## I. INTRODUCTION.

After the terrible tragedy of the bombing of the Marines' barracks on 10/23/83, the Marines families filed an action in the United States District Court, District of Columbia, entitled *Peterson vs. The Islamic Republic of Iran*, which led to a judgment against ISLAMIC REPUBLIC OF IRAN ("Iran") in the principal amount of \$2,656,944,877 rendered by the Honorable Royce C. Lamberth on 9/7/07. At the time, Iran was protected by the Foreign Sovereign Immunities Act ("FSIA") found at 28 U.S.C. § 1601 et seq., with a number of exceptions, principally centering around assets which were "blocked" and "unblocked" and the like. However, on 1/28/08, President Bush signed into effect legislation which effectively repealed the FSIA, in total, which is found at (in part) 28 U.S.C. 1605A. The key parts of that new section permitting meaningful collection efforts are found in 28 U.S.C. § 1605A(a)(1) & (g)(1), which is marked *Exhibit "A."*[1]

With the shield of foreign immunity gone, this Judgment Creditor is now free to proceed against Iranian assets rendering moot whether assets are blocked or otherwise. In any event, Iran is the sole party by which to assert its right in and to the collection, as set forth by way of Judge Martin C. Ashman's (Memorandum and Orders #123 and #163), and Iran has appeared in the Rubin litigation.

## II. MOTION FOR APPOINTMENT OF RECEIVER BY THESE PLAINTIFFS.

Plaintiffs seek to enforce all remedies available to any Judgment Creditor under FRCP 69(a)(1), including the appointment of a post-judgment receiver, consistent with practices long

---

[1] All exhibits are incorporated by reference as though fully set forth in this Memorandum in their entirety and are attached to the Declaration of David J. Cook, Esq. Which is filed contemporaneously herein.

heretofore undertaken by District Courts.  Appointment of receivers post-judgment remains a favored remedy to reach assets either inaccessible by standard levy and execution or assets difficult to liquidate through a Marshal's sale.

Plaintiffs file a motion for appointment of a receiver in this jurisdiction, seeking a receiver of the Persepolis Fortification Collection and the Chogha Mish Collection, held by The University of Chicago dba The Oriental Institute, which is the subject of the case entitled *Jenny Rubin vs. The Islamic Republic of Iran,* Case No. 03-CV-9370 ("Rubin Litigation").

## III.  CORRECT DEFINITION OF IRAN'S INTEREST.

Iran's interest in these two collections consist of the residual rights for the return of the collection at some later date.  Other than the Chogha Mish Collection, Iran has placed the collection in the hands of The University of Chicago on a permanent "bailment basis," in which Iran has reposed this collection virtually in a "bailment at will."  Iran does not claim nor assert (other than the Chogha Mish Collection) any immediate right of return, or demand that the personal property be shipped, by airfreight or otherwise, back to Tehran.  Iran's interest is best characterized as a "general intangible" or "residual right" akin to the classic "remainder interest" on a perennial and perpetual basis.  Plaintiffs recognize that some of these items, specifically part of the Chogha Mish Collection, are the subject of the Iran-U.S. Claims Tribunal process, thereby further supporting the need of a receiver to avoid any ongoing conflict with the United States.

Plaintiffs move this court for the appointment of a receiver(s) of Iran's right, title and interest in and to these collections, which principally consist of the "residual interest," constituting a classic "general intangible."

-2-

## IV.  POWERS AND DUTIES OF THE RECEIVER.

Plaintiffs move this court for the appointment of a receiver's of Iran's interest, if any. in and to the collections held by the University of Chicago as permitted by FRCP 69(a)(1) and FRCP 66. The proposed powers are as following:

1. To take possession, custody and control of the collections, and the residual interest therein.

2. To oust Iran from the Rubin Litigation, and substitute the receivers as the adverse parties.

3. To arrange a resolution with The University of Chicago, to permit The University of Chicago to retain physical custody of the collections pursuant to the pre-existing terms with Iran. in which The University of Chicago's pre-existing rights with Iran shall remain unabridged.

4. To sell solely to an institution of higher learning, museum, or like institution, Iran's residual rights in the collections.

5. To permit the receivers to retain the services of a broker, agent, or representative in the sale of the rights, retain counsel, accountants, establish bank accounts, and otherwise conduct normal business activities incidental to their duties.

6. To solicit such offers to sell the residual rights, which may include sealed bids. auction. consignment or brokerage, subject to final court approval upon notice to all parties.

7. To establish one or more bank accounts to impound all proceeds, be imbued with the power to affix the name of Iran to any check, draft, money order. note or instrument, to sign any contract, memorandum of understanding, or agreement in the name of Iran, or otherwise take any action as if the owner thereof.

8. To settle, resolve, terminate, negotiate any settlement. resolution or termination. or dispose of the Rubin Litigation as to The University of Chicago claim. subject to approval by this court.

9. To take any other action, including the filing of any papers. pleadings. appearance, or presentation in the Rubin Litigation, and take all other action therein consistent with the prosecution of Iran's interest therein. for the purpose of securing the most advantageous outcome on behalf of the Plaintiffs.

10. To post a bond in the amount as designated by the court.

11.  That Iran be stayed, prohibited and enjoined. after appointment of this order, to participate in the Rubin Litigation.

12.  That the court keep and retain continuing jurisdiction to supervise the conduct of the receivers, enter such orders to assure an orderly administration, restrain third parties from interfering with the conduct of the receiver. and to take any action which is appropriate.

The court has wide discretion in the appointment of a receiver. the scope of the duties,

and management of the estates.  *See Securities and Exchange Commission vs. Hardy etc..* 803

F.2d 1034 (9th Cir. 1986) at pages 1037 to 1038 in which the court stated as follows:

> "First, a district court's power to supervise an equity receivership and to determine
> the appropriate action to be taken in the administration of the receivership is
> extremely broad. *"[I]t is a recognized principle of law that the district court has
> broad powers and wide discretion to determine the appropriate relief in an
> equity receivership."* Lincoln Thrift. 577 F.2d at 606; see Safety Finance, 674
> F.2d at 373 (a court overseeing a receivership is accorded "wide discretionary
> powers" in light of "the concern for orderly administration"). . . .

Plaintiffs select as receivers three former federal Judges, Judge Sporkin, Judge Sullivan

and Judge Freeh. all of whom had other careers which would readily qualify them as individuals

capable of resolving these claims and converting them into cash.

The duties of a receiver can be expansive, but steps in the shoes of the debtor.  *See*

*Securities and Exchange Commission vs. American Capital Investments etc.,* 98 F.3d 1133 (9th

Cir. 1996) at pages 1144 to 1145. in which the court stated as follows:

> "Reebok Int'l v. Marnatech Enter.. Inc.. 970 F.2d 552, 561-62 (9th Cir.1992) (quoting
> Brown v. Swann, 35 U.S. (10 Pet.) 497, 503, 9 L.Ed. 508 (1836)). Second, the leading
> treatise on the law of receiverships teaches:
>
> *It is generally conceded that a court of equity having custody and control of
> property has power to order a sale of the same in its discretion. The power of
> sale necessarily follows the power to take possession and control of and to
> preserve property, resting in the sovereignty and exercised through courts of
> chancery, or courts having statutory power to make the sale.*
> . . .

We turn now to appellants' second and third arguments, which are related--that
there is no federal common law of receiverships. Consequently, they argue, a
receiver does no more than "step into the shoes" of the receivership defendant
under state law and can convey no more title than the defendant possessed. For
support, appellants rely on O'Melveny & Myers v. FDIC, 512 U.S. 79, 114 S.Ct.
2048. 129 L.Ed.2d 67 (1994). in which the Court held that state law, rather than
federal law, governs the imputation of corporate officers' knowledge of fraud to a
corporation, where the FDIC, as receiver, is prosecuting the corporation's state
causes of action. Id. at ---- - ----, 114 S.Ct. at 2052-53.

Receivers are traditionally appointed for purposes of taking possession and control, and

ultimately liquidating the property of a Judgment Debtor. *See Federal Practice and Procedure*

*2d* by Wright & Miller, Vol. 12, § 2983, pages 22-23 [multiple citations omitted]. Receivers are

traditionally appointed in a supplemental proceeding when the interest of equity suggests such a

result, specifically, when property would be difficult to reach in any other traditional manner.

*See Wood vs. Noyes*, 279 F.321 (9th Cir. 1922). Therefore, this court has the power to appoint a

receiver as a general equitable matter, and does appoint receivers from time to time. USDC,

Northern District of Illinois, Local Rule 66.1 provides as follows:

> LR66.1. Receivers; Administration of Estates
> Local Rule
> (a) General. The administration of estates by receivers or other officers shall be
> similar to that in bankruptcy cases except that the court in its discretion shall –
>> (1) fix the allowance of compensation of receivers or similar
>> officers, their counsel, and any others appointed to aid in the
>> administration of the estate, and
>> (2) direct the manner in which the estate shall be administered,
>> including the conduct of its business, the discovery and
>> acquirement of its assets, and the formation of reorganization
>> plans.

Using bankruptcy as the touchstone, a bankruptcy judge in the administration of a Chapter 7

proceeding would clearly exercise "hands on jurisdiction" to insure that the competing needs of

all parties are met and would avoid the prospect that assets would be damaged, lost or suffer a

diminution in value.

These Judgment Creditors recognize that the best interest of all parties are served by structuring an order permitting the receivers to achieve a financial recovery from the collections without disturbing the interest of The University of Chicago and the scholarly community at large. In short, replacing Iran with receivers might well serve the greater good.[2] In *Securities and Exchange Commission vs. Loving Spirits Foundation etc.,* 392 F.3d 486 (U.S.App.D.C. 2004), the court stated as follows:

> "Seven years later, with the judgment still unpaid, the district court found Bilzerian in
> contempt of the disgorgement order, *SEC v. Bilzerian,* 112 F.Supp.2d 12 (D.D.C.2000),
> *aff'd* 75 Fed.Appx. 3 (D.C.Cir. 2003), established a receivership estate "*for the purpose
> of identifying, marshaling, receiving, and liquidating his assets,*" *SEC v. Bilzerian,* 127
> F.Supp.2d 232, 232 (D.D.C.2000), appointed appellee Deborah Meshulam as receiver,
> *id.,* and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian,* 131
> F.Supp.2d 10 (D.D.C.2001). (Emphasis added)
> (p. 488)"

## V. PROPOSED RECEIVERS.

Plaintiffs nominate the following nominees as receivers:

A.     EUGENE R. SULLIVAN, Retired Chief Judge of the United States Court of
       Appeals Court for the Armed Forces.

B.     STANLEY SPORKIN, Retired United States District Court Judge and Former
       General Counsel for the Central Intelligence Agency.

C.     LOUIS FREEH, Retired United States District Court Judge and Former Director
       of the FBI.

Each one of these individuals are former federal judges, all with backgrounds in national security, military, and intelligence matters, and all of them would be more than capable of

---

[2] By any stretch of the imagination, scholarly study exploring ancient Mesopotamian culture and history is a much better outcome than peddling pieces of this collection through high-end antique stores on Rodeo Drive.

performing in this assignment, meeting the expectations of all parties.  These proposed receivers are all very exceptional individuals who bring with them such experience, sagacity, and wisdom, unlike other commercial receivers, to meet the challenge of this significant case, and to attempt to reconcile multiple conflicting interests.

## VI.  ADVERSE CLAIM OF RUBIN.

A Judgment Creditor may serve upon the Judgment Debtor or a third party, an order to appear, pursuant to Sec. 2-1402(a).  Service must be undertaken upon the "third party" and the Judgment Debtor pursuant to Sec. 2-1402(b).  The court may issue any number of appropriate orders or judgments pursuant to Sec. 2-1402( c).  However, no order or judgment can be issued by the court disposing of the subject matter of the citation, unless there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the Judgment Debtor, as required by subsection (b).  The relevant portions of Sec. 2-1402 provide as follows:

> **(735 ILCS 5/2-1402) (from Ch. 110, par. 2-1402)**
> **Sec. 2-1402. Supplementary proceedings.**
> (a) A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supplementary proceedings shall be prescribed by rules. It is not a prerequisite to the commencement of a supplementary proceeding that a certified copy of the judgment has been returned wholly or partly unsatisfied. All citations issued by the clerk shall have the following language, or language substantially similar thereto, stated prominently on the front, in capital letters: . . . .The court shall not grant a continuance of the supplementary proceeding except upon good cause shown.

(b) Any citation served upon a judgment debtor or any other person shall include a certification by the attorney for the judgment creditor or the judgment creditor setting forth the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the court, and the number of the case, and a copy of the citation notice required by this subsection. **Whenever a citation is served upon a person or party other than the judgment debtor, the officer or person serving the citation shall send to the judgment debtor, within three business days of the service upon the cited party, a copy of the citation and the citation notice, which may be sent by regular first-class mail to the judgment debtor's last known address.** In no event shall a citation hearing be held sooner than five business days after the mailing of the citation and citation notice to the judgment debtor, except by agreement of the parties. The citation notice need not be mailed to a corporation, partnership, or association. The citation notice shall be in substantially the following form. . . .

**(d) No order or judgment shall be entered under subsection © in favor of the judgment creditor unless there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the judgment debtor as required by subsection (b).**
. . .
(m) The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:
* * *
(2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation.

The lien established under this Section does not affect the rights of citation respondents in property prior to the service of the citation upon them and does not affect the rights of bona fide purchasers or lenders without notice of the citation. The lien is effective for the period specified by Supreme Court Rule. This subsection (m), as added by Public Act 88-48, is a declaration of existing law. (Emphasis added)

The Docket in the ***Rubin vs. Islamic Republic of Iran***, Case No. 03-CV-9270 (Rubin

Case) fails to evidence either the citation or a copy thereof, or proof of service for Iran or the

University of Chicago, or the "**of record a certification of mailing showing that a copy of the**

-8-

citation and a copy of the citation notice was mailed to the judgment debtor . . ." as required by Sec. 2-1402(d).

## VII.  CONSEQUENCES OF DEFECT IN THE RECORD.

A careful textual analysis of Sec. 2-1402 provides that the court is entitled to issue any number of orders in its discretion under subsection ( c).  These rights and powers, including the power of the court to compel any person cited other than the Judgment Debtor to deliver up any assets so discovered to be applied in satisfaction of the judgment. in whole or in part, when those assets are held under such circumstances that in an action by the Judgment Debtor, he or she could recover them in species, or other relief.

Sec. 2-1402(d) provides for a mandatory prohibition and restraint, limiting the court's power to issue any order or judgment for any purpose as follows:

> "No order or judgment shall be entered under subsection © in favor of the judgment creditor unless there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the judgment debtor as required by subsection (b)."

Sec. 2-1402(d) prohibits the exercise of judicial power by imposing an affirmative duty upon the Judgment Creditor to insure that "there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the judgment debtor," as required by subsection (b).  The specific prohibition mandates that the jurisdictional platform is that the court record evidences certification.  As always stated, the court should interpret a legislative enactment based upon the actual words of the statute, specifically with an eye towards insuring that the language meets the purpose.

Section 1402( c) provides the court with the power to act as follows:

-9-

( c) When assets or income of the judgment debtor not exempt from the satisfaction of a judgment, a deduction order or garnishment are discovered, the court may, by appropriate order or judgment: . . ."

This court should construe Sec. 2-1402 in authorizing a citation proceeding permitting the judgment creditor to sell, collect or dispose of the Judgment Debtor's property, but mandating notice as a jurisdiction prerequisite of the exercise of judicial power as part of the statute. Sec. 2-1402(d). The words of the statute are compelling in prohibiting judicial power without a filed certification. In *Kaiser Aluminum & Chemical Corp. v. Bonjorno* (1990) 494 U.S. 827, 835 [110 S.Ct. 1570, 1575, 108 L.Ed.2d 842], quoting from *Consumer Product Safety Comm'n v. GTE Sylvania* (1980) 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766], the United States Supreme Court held:

"The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' "

The United States Supreme Court has noted that "the statutory language controls its construction" (*Ford Motor Credit Co. v. Cenance* (1981) 452 U.S. 155, 158, fn. 3 [101 S.Ct. 2239, 2241, 68 L.Ed.2d 744]) and that " '[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.' "

The Judgment Debtor is necessarily a party in any post judgment proceedings for many reasons: 1) the Judgment Debtor has the right to exempt the property from levy and execution; 2) the Judgment Debtor has a fundamental entitlement to pay the judgment outright before the Judgment Debtor's property is seized and sold; 3) the Judgment Debtor has a right to participate to avoid property being sold at too low a price, bringing other parties in to purchase the property; 4) in the most severe setting, to avoid any type of collusion between the Judgment Creditor and

-10-

the third party; and 5) the Judgment Debtor needs to be a party as its property is the subject of an involuntary disposition and would have a right to appeal any adverse ruling.

The right of the Judgment Debtor to participate is a jurisdictional principle, in which without absolute assurances that the Judgment Debtor is a party, the court cannot act. The Illinois Legislature sought to condition judicial power upon absolute and irrefutable public assurance of notice to the judgment debtor of proceeding which would deprive the debtor of its property. Illinois Rules of Court provide for a trial, judgment and sale of the property, and the filing of a certification is the jurisdictional touchstone of any order or judgment. Sec. 2-1402( c) and Rule 277(e). Absent a certification, the court cannot act. These Plaintiffs have levied on the same property through the Citation process itself. See Docket No. 20.

Without the court barred from issuing any order or judgment, Rubin would not be entitled to the power of the court to hail into court The University of Chicago, or even the imposition of the lien. The fact of the "lien" only arises from the proper issuance and service of a Citation itself (which does not even appear on this record). If in fact no certification has been filed, the court is powerless to act at all, leading to the inescapable conclusion that the court cannot issue a lien in favor of Rubin. continue the lien, or even enforce the lien.

Rubin might well argue that Peterson lacks the standing by which to assert any defected in the Rubin record; that only Iran can raise any issue of a defect in the record; and that Iran has yet to raise this issue over the last 4 years, more or less. Rubin will also claim that the error is ministerial, minor and inconsequential. However, Section 2-1402(d) serves as a bar to any judicial order, limiting the court's jurisdiction. Notice to the judgment debtor is part of basic due process and mandated under ***Sniadach v. Family Finance Corp.*** (1969) 395 U.S. 337, 89 S.Ct.

1820, 23 L.Ed.2d 349, in which the court concluded that a Wisconsin prejudgment wage garnishment statute violated a debtor's right to procedural due process, by sanctioning the 'taking' of his property without affording him prior notice and hearing. *Sniadach, supra.*, prohibits the court from acting without the filing of the certification of service, consistent with Section 2-1402(d).

Subsection ( c) empowers a court with many broad-based powers, which necessarily would include the power to renew the lien as permitted by Illinois Supreme Court Rule of Court 277(m). Sec. 2-1402(d) mandates that the Judgment Creditor place on the record the certification to insure that all parties, such as the court, third parties, and the Judgment Debtor, have fair notice of the date of service of the certification, and that such information readily appears through the court roll. Given the fact of the renewals and the specificity and the timing of renewals, the date of the initial service of the citation becomes paramount in assuring others of whether or not a lien has been properly created, and whether the lien has been properly extended. Otherwise, third parties would never be able to know the date of creation of the lien, the date of expiration, and whether the renewal was timely.

Rubin attempted to renew the citation lien repeatedly, but a review of the various motions and orders at Docket Nos. 28, 29, 30, 31, 56, 57, 62, 85, 86 & 87 fail to show service on Iran. Iran has not been served with any of the renewals up to the time of its entrance in this matter which took place on 8/7/06 as Docket No. 180.

The citation is to be served in accordance with Illinois Supreme Court Rule 277, which provides as follows:

**Rule 277. Supplementary Proceedings**

-12-

(a) When Proceeding May be Commenced and Against Whom; Subsequent Proceeding Against Same Party. A supplementary proceeding authorized by section 2--1402 of the Code of Civil Procedure may be commenced at any time with respect to a judgment which is subject to enforcement. The proceeding may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor. If there has been a prior supplementary proceeding with respect to the same judgment against the party, whether he is the judgment debtor or a third party, no further proceeding shall be commenced against him except by leave of court. The leave may be granted upon *ex parte* motion of the judgment creditor, but only upon a finding of the court, based upon affidavit of the judgment creditor or some other person, having personal knowledge of the facts, (1) that there is reason to believe the party against whom the proceeding is sought to be commenced has property or income the creditor is entitled to reach, or, if a third party, is indebted to the judgment debtor, (2) that the existence of the property, income or indebtedness was not known to the judgment creditor during the pendency of any prior supplementary proceeding, and (3) that the additional supplementary proceeding is sought in good faith to discover assets and not to harass the judgment debtor or third party. * * * .

*The citation shall be served and returned in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default.*

(f) **When Proceeding Terminated.** A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. *The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.* (Emphasis added)

See Illinois Supreme Court Rule 105(b), which sets forth the manner of service of the

citation as follows:

(b) Service. The notice may be served by any of the following methods:
(1) By any method provided by law for service of summons, either within or without this State. Service may be made by an officer or by any person over 18 years of age not a party to the action. Proof of service by an officer may be made by return as in the case of a summons. Otherwise proof of service shall be made

by affidavit of the server, stating the time, manner, and place of service. The court may consider the affidavit and any other competent proofs in determining whether service has been properly made.

(2) By prepaid certified or registered mail addressed to the party, return receipt requested, showing to whom delivered and the date and address of delivery. The notice shall be sent "restricted delivery" when service is directed to a natural person. Service is not complete until the notice is received by the defendant, and the registry receipt is *prima facie* evidence thereof.

(3) By publication, upon the filing of an affidavit as required for publication of notice of pendency of the action in the manner of but limited to the cases provided for, and with like effect as, publication of notice of pendency of the action.

Without the certification of service, the court is deprived of the opportunity to determine whether the judgment debtor was properly served, at all or if ever. The Rubin record does not evidence service of the underlying citation; the method or manner of service, or for that matter when and how the citation was served either upon Iran or the third party.

## VIII.  CONCLUSION.

Plaintiffs seek relief consisting of the following:  Appointment of receivers to sell the residual rights to the collections under the control of The University of Chicago in which the collections would remain intact for the foreseeable future.  The residual rights would be sold to another University or museum.

An order declaring that Rubin's lien, if any, or if ever, either expired in that the court lacked the power to enter an order continuing or extending the lien, or that Rubin never acquired a lien because the certification of service of process was never filed.

DATED:  June 10, 2008                    Plaintiffs, by their attorneys

                                         By:   /s/ David J. Cook
                                         DAVID J. COOK, ESQ. (SB# 060859)
                                         COOK COLLECTION ATTORNEYS
                                         P.O. Box 270
                                         San Francisco, CA 94104-0270

-14-

Telephone: (415) 989-4730
Fax: (415) 989-0491
Email: Cook@Squeezebloodfromturnip.com

DATED: June 10, 2008

By:___/s/ Thomas Fortune Fay_____
THOMAS FORTUNE FAY, ESQ.
FAY LAW PA
601 Pennsylvania Avenue. NW
#900 - South Building
Washington, DC  20004
Telephone:  202-589-1300
Fax:  202-589-1300
Email: ThomasFay@aol.com

DATED: June 10, 2008

By: ___/s/ Jay Glenn_____
JAY GLENN, ESQ. (ARDC #0970719)
2275 Half Day Road, Suite 350
Bannockburn, IL 60015
Telephone: (849) 526-9209
Fax: (847) 526-9207
Email: glennatty@aol.com

Attorneys for Plaintiffs
DEBORAH D. PETERSON, Personal
Representatives of the Estate of James C. Knipple
(Dec.). et. al.

F: USERS\DJCNEW\peterson.appointperselos.chicago.mpa1                    .

-15-

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH D. PETERSON, Personal Representatives of the Estate of James C. Knipple (Dec.), et. al., | ) ) ) ) | Case No.: 108-CV-01592 |
| Plaintiffs-Judgment Creditors. | ) ) | Judge Robert Gettleman Magistrate Judge Ashman |
| vs. | ) ) | Date:   June 19, 2008 |
| ISLAMIC REPUBLIC OF IRAN, et al., | ) ) | Time: 11:00 a.m. Address of Court: |
| Defendants-Judgment Debtors. | ) ) | 209 South Dearborn Avenue. Chicago, Ill 60604 |

## DECLARATION OF DAVID J. COOK IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER

I. DAVID J. COOK, hereby declare and state as follows:

1. I am one of the attorneys of record for Plaintiffs in the above-entitled action, am duly authorized to practice before all courts in the State of California, and am familiar with the facts and circumstances in this action.

2. ISLAMIC REPUBLIC OF IRAN is no longer subject to sovereign immunity under the recent changes to the Foreign Sovereign Immunities Act ("FSIA"). a true and correct copy of which is attached hereto marked *Exhibit "A"*.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 10, 2008.

_/s/ David J. Cook_
DAVID J. COOK, ESQ. (SB# 060859)

-1-

**<u>EXHIBIT "A"</u>**

841

1    (2) such other findings, conclusions, and rec-
2    ommendations for improving the capabilities of the
3    Department for homeland defense as the advisory
4    panel considers appropriate.

5    **SEC. 1083. TERRORISM EXCEPTION TO IMMUNITY.**

6    (a) TERRORISM EXCEPTION TO IMMUNITY.—

7    (1) IN GENERAL.—Chapter 97 of title 28,
8    United States Code, is amended by inserting after
9    section 1605 the following:

10   **"§ 1605A. Terrorism exception to the jurisdictional**
11   **immunity of a foreign state**

12   "(a) IN GENERAL.—

13   "(1) NO IMMUNITY.—A foreign state shall not
14   be immune from the jurisdiction of courts of the
15   United States or of the States in any case not other-
16   wise covered by this chapter in which money dam-
17   ages are sought against a foreign state for personal
18   injury or death that was caused by an act of torture,
19   extrajudicial killing, aircraft sabotage, hostage tak-
20   ing, or the provision of material support or resources
21   for such an act if such act or provision of material
22   support or resources is engaged in by an official,
23   employee, or agent of such foreign state while acting
24   within the scope of his or her office, employment, or
25   agency.



A

F:\GMK\ASCR08\REINTRO.002

H.L.C.

842

1    "(2) CLAIM HEARD.—The court shall hear a
2    claim under this section if—

3        "(A)(i)(I) the foreign state was designated
4        as a state sponsor of terrorism at the time the
5        act described in paragraph (1) occurred, or was
6        so designated as a result of such act, and, sub-
7        ject to subclause (II), either remains so des-
8        ignated when the claim is filed under this sec-
9        tion or was so designated within the 6-month
10       period before the claim is filed under this sec-
11       tion; or

12           "(II) in the case of an action that is refiled
13           under this section by reason of section
14           1083(c)(2)(A) of the National Defense Author-
15           ization Act for Fiscal Year 2008 or is filed
16           under this section by reason of section
17           1083(c)(3) of that Act, the foreign state was
18           designated as a state sponsor of terrorism when
19           the original action or the related action under
20           section 1605(a)(7) (as in effect before the en-
21           actment of this section) or section 589 of the
22           Foreign Operations, Export Financing, and Re-
23           lated Programs Appropriations Act, 1997 (as
24           contained in section 101(c) of division A of
25           Public Law 104–208) was filed;



843

1                 "(ii) the claimant or the victim was, at the

2         time the act described in paragraph (1)

3         occurred—

4                 "(I) a national of the United States;

5                 "(II) a member of the armed forces;

6                 or

7                 "(III) otherwise an employee of the

8         Government of the United States, or of an

9         individual performing a contract awarded

10        by the United States Government, acting

11        within the scope of the employee's employ-

12        ment; and

13             "(iii) in a case in which the act occurred

14        in the foreign state against which the claim has

15        been brought, the claimant has afforded the

16        foreign state a reasonable opportunity to arbi-

17        trate the claim in accordance with the accepted

18        international rules of arbitration; or

19             "(B) the act described in paragraph (1) is

20        related to Case Number 1:00CV03110 (EGS)

21        in the United States District Court for the Dis-

22        trict of Columbia.

23     "(b) LIMITATIONS.—An action may be brought or

24 maintained under this section if the action is commenced,

25 or a related action was commenced under section



844

1    1605(a)(7) (before the date of the enactment of this sec-

2    tion) or section 589 of the Foreign Operations, Export Fi-

3    nancing, and Related Programs Appropriations Act, 1997

4    (as contained in section 101(c) of division A of Public Law

5    104–208) not later than the latter of—

6              ''(1) 10 years after April 24, 1996; or

7              ''(2) 10 years after the date on which the cause

8         of action arose.

9         ''(c) PRIVATE RIGHT OF ACTION.—A foreign state

10   that is or was a state sponsor of terrorism as described

11   in subsection (a)(2)(A)(i), and any official, employee, or

12   agent of that foreign state while acting within the scope

13   of his or her office, employment, or agency, shall be liable

14   to—

15             ''(1) a national of the United States,

16             ''(2) a member of the armed forces,

17             ''(3) an employee of the Government of the

18        United States, or of an individual performing a con-

19        tract awarded by the United States Government,

20        acting within the scope of the employee's employ-

21        ment, or

22             ''(4) the legal representative of a person de-

23        scribed in paragraph (1), (2), or (3),

24   for personal injury or death caused by acts described in

25   subsection (a)(1) of that foreign state, or of an official,



845

1    employee, or agent of that foreign state, for which the

2    courts of the United States may maintain jurisdiction

3    under this section for money damages. In any such action,

4    damages may include economic damages, solatium, pain

5    and suffering, and punitive damages. In any such action,

6    a foreign state shall be vicariously liable for the acts of

7    its officials, employees, or agents.

8        "(d) ADDITIONAL DAMAGES.—After an action has

9    been brought under subsection (c), actions may also be

10   brought for reasonably foreseeable property loss, whether

11   insured or uninsured, third party liability, and loss claims

12   under life and property insurance policies, by reason of

13   the same acts on which the action under subsection (c)

14   is based.

15       "(e) SPECIAL MASTERS.—

16           "(1) IN GENERAL.—The courts of the United

17       States may appoint special masters to hear damage

18       claims brought under this section.

19           "(2) TRANSFER OF FUNDS.—The Attorney

20       General shall transfer, from funds available for the

21       program under section 1404C of the Victims of

22       Crime Act of 1984 (42 U.S.C. 10603c), to the Ad-

23       ministrator of the United States district court in

24       which any case is pending which has been brought

25       or maintained under this section such funds as may



F:\GMK\ASCR08\REINTRO.002                                H.L.C.

846

1    be required to cover the costs of special masters ap-

2    pointed under paragraph (1). Any amount paid in

3    compensation to any such special master shall con-

4    stitute an item of court costs.

5    "(f) APPEAL.—In an action brought under this sec-

6    tion, appeals from orders not conclusively ending the liti-

7    gation may only be taken pursuant to section 1292(b) of

8    this title.

9    "(g) PROPERTY DISPOSITION.—

10    "(1) IN GENERAL.—In every action filed in a

11    United States district court in which jurisdiction is

12    alleged under this section, the filing of a notice of

13    pending action pursuant to this section, to which is

14    attached a copy of the complaint filed in the action,

15    shall have the effect of establishing a lien of lis

16    pendens upon any real property or tangible personal

17    property that is—

18        "(A) subject to attachment in aid of execu-

19        tion, or execution, under section 1610;

20        "(B) located within that judicial district;

21        and

22        "(C) titled in the name of any defendant,

23        or titled in the name of any entity controlled by

24        any defendant if such notice contains a state-

25        ment listing such controlled entity.



II.L.C.

847

1    "(2) NOTICE.—A notice of pending action pur-

2    suant to this section shall be filed by the clerk of the

3    district court in the same manner as any pending

4    action and shall be indexed by listing as defendants

5    all named defendants and all entities listed as con-

6    trolled by any defendant.

7    "(3) ENFORCEABILITY.—Liens established by

8    reason of this subsection shall be enforceable as pro-

9    vided in chapter 111 of this title.

10    "(h) DEFINITIONS.—For purposes of this section—

11    "(1) the term 'aircraft sabotage' has the mean-

12    ing given that term in Article 1 of the Convention

13    for the Suppression of Unlawful Acts Against the

14    Safety of Civil Aviation;

15    "(2) the term 'hostage taking' has the meaning

16    given that term in Article 1 of the International

17    Convention Against the Taking of Hostages;

18    "(3) the term 'material support or resources'

19    has the meaning given that term in section 2339A

20    of title 18;

21    "(4) the term 'armed forces' has the meaning

22    given that term in section 101 of title 10;

23    "(5) the term 'national of the United States'

24    has    the    meaning    given    that    term    in    section



848

1    101(a)(22) of the Immigration and Nationality Act

2    (8 U.S.C. 1101(a)(22));

3         "(6) the term 'state sponsor of terrorism'

4    means a country the government of which the Sec-

5    retary of State has determined, for purposes of sec-

6    tion 6(j) of the Export Administration Act of 1979

7    (50 U.S.C. App. 2405(j)), section 620A of the For-

8    eign Assistance Act of 1961 (22 U.S.C. 2371), sec-

9    tion 40 of the Arms Export Control Act (22 U.S.C.

10   2780), or any other provision of law, is a govern-

11   ment that has repeatedly provided support for acts

12   of international terrorism; and

13        "(7) the terms 'torture' and 'extrajudicial kill-

14   ing' have the meaning given those terms in section

15   3 of the Torture Victim Protection Act of 1991 (28

16   U.S.C. 1350 note).".

17        (2) AMENDMENT TO CHAPTER ANALYSIS.—The

18   table of sections at the beginning of chapter 97 of

19   title 28, United States Code, is amended by insert-

20   ing after the item relating to section 1605 the fol-

21   lowing:

"1605A. Terrorism exception to the jurisdictional immunity of a foreign state.".



22   (b) CONFORMING AMENDMENTS.—

23        (1) GENERAL EXCEPTION.—Section 1605 of

24   title 28, United States Code, is amended—

25             (A) in subsection (a)—

849

1   (i) in paragraph (5)(B), by inserting

2   "or" after the semicolon;

3   (ii) in paragraph (6)(D), by striking

4   "; or" and inserting a period; and

5   (iii) by striking paragraph (7);

6   (B) by repealing subsections (e) and (f);

7   and

8   (C) in subsection (g)(1)(A), by striking

9   "but for subsection (a)(7)" and inserting "but

10   for section 1605A".

11   (2) COUNTERCLAIMS.—Section 1607(a) of title

12   28, United States Code, is amended by inserting "or

13   1605A" after "1605".

14   (3) PROPERTY.—Section 1610 of title 28,

15   United States Code, is amended—

16   (A) in subsection (a)(7), by striking

17   "1605(a)(7)" and inserting "1605A";

18   (B) in subsection (b)(2), by striking "(5),

19   or (7), or 1605(b)" and inserting "or (5),

20   1605(b), or 1605A";

21   (C) in subsection (f), in paragraphs (1)(A)

22   and (2)(A), by inserting "(as in effect before

23   the enactment of section 1605A) or section

24   1605A" after "1605(a)(7)"; and

25   (D) by adding at the end the following:



850

1    "(g) PROPERTY IN CERTAIN ACTIONS.—

2        "(1) IN GENERAL.—Subject to paragraph (3),

3    the property of a foreign state against which a judg-

4    ment is entered under section 1605A, and the prop-

5    erty of an agency or instrumentality of such a state,

6    including property that is a separate juridical entity

7    or is an interest held directly or indirectly in a sepa-

8    rate juridical entity, is subject to attachment in aid

9    of execution, and execution, upon that judgment as

10    provided in this section, regardless of—

11            "(A) the level of economic control over the

12        property by the government of the foreign state;

13            "(B) whether the profits of the property go

14        to that government;

15            "(C) the degree to which officials of that

16        government manage the property or otherwise

17        control its daily affairs;

18            "(D) whether that government is the sole

19        beneficiary in interest of the property; or

20            "(E) whether establishing the property as

21        a separate entity would entitle the foreign state

22        to benefits in United States courts while avoid-

23        ing its obligations.

24        "(2) UNITED STATES SOVEREIGN IMMUNITY IN-

25    APPLICABLE.—Any property of a foreign state, or



851

1  agency or instrumentality of a foreign state, to
2  which paragraph (1) applies shall not be immune
3  from attachment in aid of execution, or execution,
4  upon a judgment entered under section 1605A be-
5  cause the property is regulated by the United States
6  Government by reason of action taken against that
7  foreign state under the Trading With the Enemy
8  Act or the International Emergency Economic Pow-
9  ers Act.

10      "(3) THIRD-PARTY JOINT PROPERTY HOLD-
11  ERS.—Nothing in this subsection shall be construed
12  to supersede the authority of a court to prevent ap-
13  propriately the impairment of an interest held by a
14  person who is not liable in the action giving rise to
15  a judgment in property subject to attachment in aid
16  of execution, or execution, upon such judgment.".

17      (4)  VICTIMS   OF   CRIME   ACT.—Section
18  1404C(a)(3) of the Victims of Crime Act of 1984
19  (42 U.S.C. 10603c(a)(3)) is amended by striking
20  "December 21, 1988 with respect to which an inves-
21  tigation or" and inserting "October 23, 1983, with
22  respect to which an investigation or civil or crimi-
23  nal".

24  (c) APPLICATION TO PENDING CASES.—



852

1          (1) IN GENERAL.—The amendments made by
2    this section shall apply to any claim arising under
3    section 1605A of title 28, United States Code.

4          (2) PRIOR ACTIONS.—

5               (A) IN GENERAL.—With respect to any ac-
6          tion that—

7                    (i)  was  brought  under  section
8               1605(a)(7) of title 28, United States Code,
9               or section 589 of the Foreign Operations,
10              Export Financing, and Related Programs
11              Appropriations Act, 1997 (as contained in
12              section 101(c) of division A of Public Law
13              104–208), before the date of the enact-
14              ment of this Act,

15                   (ii) relied upon either such provision
16              as creating a cause of action,

17                   (iii) has been adversely affected on the
18              grounds that either or both of these provi-
19              sions fail to create a cause of action
20              against the state, and

21                   (iv) as of such date of enactment, is
22              before the courts in any form, including on
23              appeal or motion under rule 60(b) of the
24              Federal Rules of Civil Procedure,



F:\GMK\ASCR08\REINTRO.002                                     H.L.C.

853

1    that action, and any judgment in the action

2    shall, on motion made by plaintiffs to the

3    United States district court where the action

4    was initially brought, or judgment in the action

5    was initially entered, be given effect as if the

6    action had originally been filed under section

7    1605A(c) of title 28, United States Code.

8        (B) DEFENSES WAIVED.—The defenses of

9    res judicata, collateral estoppel, and limitation

10   period are waived—

11           (i) in any action with respect to which

12       a motion is made under subparagraph (A),

13       or

14           (ii) in any action that was originally

15       brought, before the date of the enactment

16       of this Act, under section 1605(a)(7) of

17       title 28, United States Code, or section

18       589 of the Foreign Operations, Export Fi-

19       nancing, and Related Programs Appropria-

20       tions Act, 1997 (as contained in section

21       101(c) of division A of Public Law 104–

22       208), and is refiled under section 1605A(c)

23       of title 28, United States Code,

24   to the extent such defenses are based on the

25   claim in the action.



F:\GMK\ASCR08\REINTRO.002

H.L.C.

854

    (C) TIME LIMITATIONS.—A motion may be
made or an action may be refiled under sub-
paragraph (A) only—

      (i) if the original action was com-
menced not later than the latter of—

        (I) 10 years after April 24, 1996;
or

        (II) 10 years after the cause of
action arose; and

      (ii) within the 60-day period begin-
ning on the date of the enactment of this
Act.

    (3) RELATED ACTIONS.—If an action arising
out of an act or incident has been timely commenced
under section 1605(a)(7) of title 28, United States
Code, or section 589 of the Foreign Operations, Ex-
port Financing, and Related Programs Appropria-
tions Act, 1997 (as contained in section 101(c) of
division A of Public Law 104–208), any other action
arising out of the same act or incident may be
brought under section 1605A of title 28, United
States Code, if the action is commenced not later
than the latter of 60 days after—

    (A) the date of the entry of judgment in
the original action; or



855

1       (B) the date of the enactment of this Act.

2       (4) PRESERVING THE JURISDICTION OF THE

3       COURTS.—Nothing in section 1503 of the Emer-

4       gency Wartime Supplemental Appropriations Act,

5       2003 (Public Law 108–11, 117 Stat. 579) has ever

6       authorized, directly or indirectly, the making inappli-

7       cable of any provision of chapter 97 of title 28,

8       United States Code, or the removal of the jurisdic-

9       tion of any court of the United States.

10      (d) APPLICABILITY TO IRAQ.—

11          (1) APPLICABILITY.—The President may waive

12      any provision of this section with respect to Iraq, in-

13      sofar as that provision may, in the President's deter-

14      mination, affect Iraq or any agency or instrumen-

15      tality thereof, if the President determines that—

16              (A) the waiver is in the national security

17          interest of the United States;

18              (B) the waiver will promote the reconstruc-

19          tion of, the consolidation of democracy in, and

20          the relations of the United States with, Iraq;

21          and

22              (C) Iraq continues to be a reliable ally of

23          the United States and partner in combating

24          acts of international terrorism.



F:\GMK\ASCR08\REINTRO.002

H.L.C.

856

1    (2) TEMPORAL SCOPE.—The authority under

2    paragraph (1) shall apply—

3        (A) with respect to any conduct or event

4        occurring before or on the date of the enact-

5        ment of this Act;

6        (B) with respect to any conduct or event

7        occurring before or on the date of the exercise

8        of that authority; and

9        (C) regardless of whether, or the extent to

10       which, the exercise of that authority affects any

11       action filed before, on, or after the date of the

12       exercise of that authority or of the enactment

13       of this Act.

14   (3) NOTIFICATION TO CONGRESS.—A waiver by

15   the President under paragraph (1) shall cease to be

16   effective 30 days after it is made unless the Presi-

17   dent has notified Congress in writing of the basis for

18   the waiver as determined by the President under

19   paragraph (1).

20   (4) SENSE OF CONGRESS.—It is the sense of

21   the Congress that the President, acting through the

22   Secretary of State, should work with the Govern-

23   ment of Iraq on a state-to-state basis to ensure com-

24   pensation for any meritorious claims based on ter-

25   rorist acts committed by the Saddam Hussein re-



857

1      gime against individuals who were United States na-

2      tionals or members of the United States Armed

3      Forces at the time of those terrorist acts and whose

4      claims cannot be addressed in courts in the United

5      States due to the exercise of the waiver authority

6      under paragraph (1).

7      (e) SEVERABILITY.—If any provision of this section

8 or the amendments made by this section, or the applica-

9 tion of such provision to any person or circumstance, is

10 held invalid, the remainder of this section and such

11 amendments, and the application of such provision to

12 other persons not similarly situated or to other cir-

13 cumstances, shall not be affected by such invalidation.

# 14 TITLE XI—CIVILIAN PERSONNEL
# 15 MATTERS

Sec. 1101. Extension of authority to waive annual limitation on total compensa-
tion paid to Federal civilian employees working overseas under
areas of United States Central Command.

Sec. 1102. Continuation of life insurance coverage for Federal employees called
to active duty.

Sec. 1103. Transportation of dependents, household effects, and personal prop-
erty to former home following death of Federal employee where
death resulted from disease or injury incurred in the Central
Command area of responsibility.

Sec. 1104. Special benefits for civilian employees assigned on deployment tem-
porary change of station.

Sec. 1105. Death gratuity authorized for Federal employees.

Sec. 1106. Modifications to the National Security Personnel System.

Sec. 1107. Requirement for full implementation of personnel demonstration
project.

Sec. 1108. Authority for inclusion of certain Office of Defense Research and
Engineering positions in experimental personnel program for
scientific and technical personnel.

Sec. 1109. Pilot program for the temporary assignment of information tech-
nology personnel to private sector organizations.

Sec. 1110. Compensation for Federal wage system employees for certain travel
hours.



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH D. PETERSON. Personal Representatives of the Estate of James C. Knipple (Dec.). et. al.. | ) ) ) ) | Case No.: 108-CV-01592 |
| Plaintiffs-Judgment Creditors. | ) ) ) | Judge Robert Gettleman Magistrate Judge Ashman |
| vs. | ) ) | |
| ISLAMIC REPUBLIC OF IRAN, et al., | ) ) | |
| Defendants-Judgment Debtors. | ) ) | |

## PROOF OF SERVICE

HIS EXCELLENCY AYATOLLAH
SAYED ·ALI KHAMENEI
THE OFFICE OF THE SUPREME
LEADER
Islamic Republic Street
Shahid Keshvar Doust Street
Tehran. Islamic Republic of Iran

President
HIS EXCELLENCY MAHMOUD
AHMADINEJAD THE PRESIDENT
Palestine Avenue
Azerbaijan Intersection
Tehran. Islamic Republic of Iran
Fax: +98 21 6 649 5880

ISLAMIC REPUBLIC OF IRAN acting
through its MINISTRY OF DEFENSE AND
SUPPORT FOR ARMED FORCES
No. 1 Shahid Kaboli Street
Beginning of Resalat Highway
Seyyed Khandan Bridge
P.O. Box 16765-1479
Tehran, Iran
Attn: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

ISLAMIC REPUBLIC OF IRAN
Pasadaran Avenue
Golestan Yekom
Teheran. Iran
ATTN: Attn: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

-1-

ISLAMIC REPUBLIC OF IRAN
Khomeini Avenue
United Nations Street
Teheran, Iran
ATTN: Attn: President Dr. Ahmadinejad or
Agent for Service of Process or
Responsible Officer

Director, Human Rights Headquarters of
Iran
HIS EXCELLENCY MOHAMMAD
JAVAD LARIJANI
c/o Office of the Deputy for International
Affairs
Ministry of Justice
Ministry of Justice Building
Panzdah-Khordad (Ark) Square
Tehran, Islamic Republic of Iran
Fax: +98 21 5 537 8827

Minister of Intelligence
GHOLAM HOSSEIN MOHSENI EJEIE
MINISTRY OF INTELLIGENCE
Second Negarestan Street
Pasdaran Avenue
Tehran, Islamic Republic of Iran

Head of the Judiciary
AYATOLLAH MAHMOUD HASHEMI
SHAHROUDI
Howzeh Riyasat-e Qoveh Qazaiyeh
Office of the Head of the Judiciary
Pasteur Street, Vali Asr Avenue
South of Serah-e Jomhouri
Tehran 1316814737
Islamic Republic of Iran

AUSA
United States Attorney's Office (NDIL)
219 South Dearborn Street , Suite 500
Chicago, IL 60604

Matthew G. Allison
Baker & McKenzie LLP (Chicago)
One Prudential Plaza
130 East Randolph Drive, Suite 3500
Chicago, IL 60601

R. Clay Bennett
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Rupa Bhattacharyya
United States Department of Justice
Federal Programs Branch
P.O. Box 883
901 East Street, N.W., Room 910
Washington, DC 20044

Robert David Cheifetz
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603

Thomas G. Corcoran
Berliner Corcoran & Rowe, LLP
1101 17th Avenue
Washington, DC 20036-5555

Thomas Justin Cunningham
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Thomas Anthony Doyle
Baker & McKenzie LLP (Chicago)
One Prudential Plaza
130 East Randolph Drive, Suite 3500
Chicago, IL 60601

Lesley R. Farby
U.S. Dept. of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

Simon A. Fleischmann
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Richard M. Franklin
Baker & McKenzie
130 East Randolph Drive, Suite 3200
Chicago, IL 60601

Kevin David Kelly
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606

Hillary Paige Krantz
Freeborn & Peters, LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606

Michael D. McCormick
708 Tomlin Drive, Suite 1800
Burr Ridge, IL 60527

Timothy M Murphy
Timothy M. Murphy, P.C.
4436 North Kildare Avenue
Chicago, IL 60630

Robert S. Parker
McIntyre, Tate, Lynch & Holt
321 South Main Street, Suite 400
Providence, RI 02903

Daniel A. Shmikler
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603

David J. Strachman
McIntyre, Tate, Lynch & Holt
321 South Main St., #400
Providence, RI 02903

United States Attorney's Office
219 South Dearborn
Chicago, IL 60604

Laina C. Wilk
Berliner, Corcoran & Rowe, LLP
1101 17th Street, NW
Washington, DC 20036

Renee Helen Wiszowaty
Litchfield Cavo
303 West Madison Street, Suite 300
Chicago, IL 60606

JAY GLENN, ESQ. (ARDC #0970719)
2275 Half Day Road, Suite 350
Bannockburn, IL 60015
Telephone: (849) 526-9209
Fax: (847) 526-9207
Email: glennatty@aol.com

I declare:

I am employed in the County of San Francisco, California. I am over the age of eighteen (18) years and not a party to the within cause. My business address is 165 Fell Street, San Francisco, CA 94102. On the date set forth below, I served the attached:

NOTICE OF MOTION FOR APPOINTMENT OF RECEIVER

DEBORAH D. PETERSON'S MEMORANDUM OF LAW IN SUPPORT OF
DEBORAH D. PETERSON'S NOTICE OF MOTION FOR APPOINTMENT OF
RECEIVER OF THE PERSEPOLIS FORTIFICATION COLLECTION AND THE
CHOGHA MISH COLLECTION PURSUANT TO F.R.C.P. 66, LOCAL RULE 66.1,
F.R.C.P. 69(a)(1), AND MOTION TO DETERMINE INTEREST OF RUBIN PARTIES

DECLARATION OF DAVID J. COOK IN SUPPORT OF MOTION FOR
APPOINTMENT OF RECEIVER

on the above-named person(s) by:

___XXX___  (BY MAIL) Placing a true copy thereof, enclosed in a sealed envelope with postage
thereon fully prepaid, in the United States mail at San Francisco, California, addressed to the
person(s) served above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 10, 2008.

                                        /s/Karene Jen
                                        Karene Jen